Jeffrey Kurtzman
**KURTZMAN STEADY, LLC**
401 S. 2nd Street, Suite 200
Philadelphia, PA 19147
Telephone:  (215) 883-1600

-and-

Todd M. Goren (*pro hac vice* pending)
Andrew Kissner (*pro hac vice* pending)
Katherine Richardson Arnould (*pro hac vice* pending)
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Telephone: 212-468-8000
Facsimile: 212-468-7900

*Attorneys for Dr. Michael Jaffé, as insolvency*
*administrator over the assets of Wirecard AG*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 15 |
| | : | |
| | : | |
| WIRECARD AG,[1] | : | Case No.  21-10936 |
| | : | |
| Debtor in a Foreign Proceeding. | : | |
| | : | |

**DECLARATION OF RECHTSANWALT PROF. DR. CHRISTIAN C.-W. PLEISTER IN**
**SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF A FOREIGN MAIN**
**PROCEEDING AND APPLICATION FOR RELATED RELIEF**

I, Rechtsanwalt Professor Dr. Christian C.-W. Pleister, do hereby declare, under penalty of

perjury under the laws of the United States of America, that the following is true and correct to the

best of my knowledge and belief:

---

[1] The Debtor's company number, registered with the local court of Munich, is HRB 169227.  The registered office of
the Debtor is Einsteinring 35, 85609 Aschheim, Germany.

1.      I am Rechtsanwalt Professor Dr. Christian C.-W. Pleister, German attorney, admitted to the bar of Berlin and Frankfurt/Main, Germany, and partner with the law firm Noerr Partnerschaftsgesellschaft mbB ("Noerr").  Noerr acted as German legal counsel to Wirecard AG ("Wirecard") in connection with its insolvency filing and during the preliminary insolvency proceedings with the consent of its preliminary insolvency administrator.  Following the commencement of an insolvency proceeding over the assets of Wirecard (the "German Proceeding"), Noerr has acted as German legal counsel to the insolvency administrator of Wirecard, Rechtsanwalt Dr. Michael Jaffé (the "Insolvency Administrator").

2.      I respectfully submit this declaration (the "Declaration") in support of the *Verified Petition for Recognition of a Foreign Main Proceeding and Application for Related Relief, and Memorandum of Law in Support Thereof* (the "Petition") and the *Emergency Motion for Provisional Injunctive Relief Pending Recognition of Foreign Main Proceeding* (the "Motion for Provisional Relief"), filed contemporaneously herewith, seeking (a) the U.S. Bankruptcy Court's recognition of the German Proceeding as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517(b)(1), and the Insolvency Administrator as "foreign representative" of Wirecard, pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and (b) provisional relief staying the Securities Plaintiffs (as defined herein) from pursuing the Securities Litigation (as defined herein) or seeking enforcement against Wirecard, pending recognition of the Petition.

3.      I make this Declaration as German legal counsel to the Insolvency Administrator in his statutory capacity as an ex-officio party appointed by the German judiciary, and request an extension of comity for the benefit of all of Wirecard's creditors, whose interests the Insolvency Administrator represents.  This Declaration is comprised of statements of fact that are either

ny-2086744

(a) based on my personal knowledge and are known to me to be true and accurate, or (b) if not within my personal knowledge, are derived from documents or information supplied to me by or on behalf of the Insolvency Administrator, and are true to the best of my knowledge, information and belief.  I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

4.      As a result of Noerr's representation of Wirecard and, subsequently, the Insolvency Administrator, I have become familiar with the details of Wirecard's businesses and operations, the circumstances giving rise to its insolvency, and the course of the German Proceeding to date. I am also familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on December 15, 1997.  I also understand that the Model Law has been adopted in the United States as Chapter 15 of the Bankruptcy Code.

## I.    CORPORATE BACKGROUND

5.      Wirecard was founded on May 6, 1999 as InfoGenie Europe Aktiengesellschaft. Wirecard is the German holding company of a group of companies which provide payment processing and other financial services.  It is a public limited company whose common stock is publicly traded on the Frankfurt Stock Exchange and was listed on the DAX index, Germany's primary stock index, consisting of the thirty largest companies that trade on the Frankfurt Stock Exchange.   Wirecard's headquarters, principal executive offices, and registered office are located at Einsteinring 35, 85609 Aschheim, Germany.   As a result of various acquisitions and incorporations, Wirecard ultimately extended its operations worldwide.

6.      At the time of its insolvency petition, Wirecard was the ultimate parent company of more than 50 subsidiaries in several countries across Europe, North and South America, Africa

and Asia (collectively, the "Wirecard Group").  A corporate organization chart for the Wirecard Group at the time of the insolvency petition is attached to this Declaration as **Exhibit A**.

7.     Currently, Wirecard still indirectly holds two non-operational subsidiaries in the United States through its solvent wholly-owned subsidiary Wirecard Acquiring & Issuing GmbH ("WDAI"): Wirecard U.S. Holdings, Inc. and WDB US, Inc., both of which are in the process of being dissolved.  Wirecard U.S. Holdings, Inc. has filed a Certificate of Dissolution with the Secretary of State of Delaware on January 27, 2021.  WDB US, Inc. has filed its Articles of Dissolution with the Department of Commerce, Salt Lake City, Utah on January 27, 2021.

8.     An additional U.S. subsidiary formerly owned by WDAI, Wirecard North America Inc. (renamed as North Lane Technologies Inc., the "Sold U.S. Subsidiary"), was sold by WDAI to Newport Parent, Inc. on the basis of a stock purchase agreement signed on October 22, 2020, which closed on December 10, 2020.

## II.     EVENTS LEADING TO BANKRUPTCY

9.     As early as 2015, critical news coverage regarding Wirecard's finances started to emerge.  In the beginning of 2019, reports published by sources including the Financial Times questioned Wirecard's business and accounting practices in Asia.  On February 18, 2019, the German Federal Financial Supervisory Authority ("BaFin") forbade the short selling of Wirecard's stock for a period of two months.  Among other reasons, BaFin based this decision on the fact that Wirecard's stock temporarily fell by 40% within two weeks following the aforementioned news coverage.

10.     Critical media coverage of Wirecard persisted with reports questioning, among other things, the sales and profits generated via so-called "third party acquiring partners," which pursuant to the description provided by Wirecard at that time were companies that processed payments on Wirecard's behalf in jurisdictions where Wirecard did not have operations or relevant

4

payment licenses, in return for a portion of the fees generated.  I understand that Wirecard rejected

these claims, continued its operations in the ordinary course, and filed several criminal complaints,

including against certain journalists.

11.     In October 2019, Wirecard, represented by its supervisory board, retained the

auditing firm KPMG in order to undertake a special investigation in connection with certain of the

allegations made by the media, including with respect to the so-called third party acquiring

partners.  KPMG ultimately concluded that it had been unable to verify the existence or non-

existence of the third party acquiring partner business, in part due to the non-collaboration of the

relevant business partners.

12.     On June 18, 2020, Wirecard announced that Ernst & Young, its long-time auditor,

could not confirm approximately EUR 1.9 billion supposedly held in escrow accounts for Wirecard

Group entities, and that there were indications that incorrect account balance confirmations had

been submitted to Ernst & Young in this respect.  In light of this and other irregularities, Ernst &

Young issued an adverse audit opinion with respect to Wirecard's individual and consolidated

annual financial statements for the year 2019.

## III.    INSOLVENCY PETITION AND PRELIMINARY INSOLVENCY PROCEEDINGS

13.     On June 25, 2020, Wirecard filed an application with the Local Court of Munich –

Insolvency Court – (the "German Court") to initiate insolvency proceedings under the insolvency

laws of Germany (such laws, collectively, the "German Insolvency Code").[2]  That same day, the

Frankfurt Stock Exchange temporarily suspended trading of Wirecard's stock as a result of

Wirecard's insolvency petition.    The Munich prosecutor's office opened investigations into

---

[2] An official translation of the German Insolvency Code is attached as Exhibit A to the Madaus Declaration, filed
contemporaneously herewith.

several Wirecard Group executives, including members of the Wirecard executive board of directors, of which the former Chief Executive Officer Dr. Markus Braun remains in custody and one is a fugitive.

14.     By resolution dated June 25, 2020, the German Court appointed the Insolvency Administrator as an expert charged with determining whether the assets of Wirecard would cover the costs of the insolvency proceedings, reviewing whether grounds for the opening of insolvency proceedings existed, and evaluating the viability of Wirecard's business going forward.

15.     By complementary resolution dated June 29, 2020 (the "Preliminary Insolvency Order"), the German Court ordered the provisional insolvency administration to secure Wirecard's assets and appointed the Insolvency Administrator as the preliminary insolvency administrator. Pursuant to the Preliminary Insolvency Order, disposals of Wirecard's assets were valid only upon the approval of the preliminary insolvency administrator.  Moreover, pursuant to the Preliminary Insolvency Order and in accordance with Section 21, Paragraph 2, Number 3 of the German Insolvency Code, all execution measures against Wirecard's property were prohibited and suspended, except for execution in immovable assets.  A certified copy of the Preliminary Insolvency Order, along with a certified English translation thereof, are annexed to this declaration as **Exhibit B**.  The German Court also appointed a preliminary creditors' committee (the "Preliminary Creditors' Committee").

16.     Due to the complex structure of, and severe situation faced by, Wirecard, a comprehensive description of the extensive range of tasks performed by the Insolvency Administrator during the preliminary insolvency proceedings would exceed the scope of this declaration.  In short, however, the Insolvency Administrator's efforts during the preliminary insolvency period were focused on (a) securing a continuation of Wirecard's core business (the

"Core Business") in order to find an investor via a structured sale process, and (b) stabilizing—to the extent possible—Wirecard's international businesses, which were independent from the Core Business, in order to allow for an expedited sale of such entities. Although the Insolvency Administrator's efforts were ultimately successful, they were greatly complicated by a number of obstacles, including overlapping criminal investigations, as well as constant news coverage revealing additional details on Wirecard's potentially criminal practices.

## IV.    INSOLVENCY PROCEEDINGS

17.    Based on the Insolvency Administrator's expert opinion, the German Court initiated the German Proceeding over the estate of Wirecard on August 25, 2020 and appointed the Insolvency Administrator (the "Insolvency Order"). A certified copy of the Insolvency Order and a certified English translation thereof, are annexed to this Declaration as **Exhibit C**. According to the Insolvency Order, the German Court ascertained that Wirecard was both unable to pay its debts and over-indebted. Pursuant to the Insolvency Order, the German Court appointed a creditors' committee (the "Creditors' Committee") consisting of three initial members that were appointed to the Preliminary Creditors' Committee—comprised of ING Bank AG, a branch of ING-DiBa AG; Rechtsanwalt Marvin Kewe, representing small creditors; and Anne Rösener, head of Wirecard Human Resources, appointed to represent Wirecard's employees—and Trinity Investments DAC, which I understand to have been the largest financial creditor of Wirecard at the time, after having acquired claims from other financial creditors. Commerzbank Aktiengesellschaft was subsequently elected by the creditors' assembly as a fifth member of the Creditors' Committee.[3]

---

[3] Additional details regarding the German Insolvency Code and the procedural and administrative history of the German Proceeding are set forth in the Madaus Declaration, filed contemporaneously herewith.

18.    Immediately upon being appointed as an expert by the German Court on June 25, 2020, the Insolvency Administrator began making information requests to all third party stakeholders so that all information relating to the Wirecard's business and assets could be understood.  An ongoing dialogue with a number of these stakeholders has ensued.  A detailed review of the records obtained has been undertaken, particularly in relation to the assets of Wirecard.  In-person meetings and teleconferences have been set up as and when required to obtain further clarity.  The Insolvency Administrator is continuing his efforts to gather books, records and information pertaining to Wirecard.

19.    Since the beginning of the preliminary insolvency proceedings, the Insolvency Administrator's main focus has been to sell Wirecard's Core Business and international subsidiaries in a manner that maximizes value for Wirecard's creditors.  In addition to the aforementioned sale of the Sold U.S. Subsidiary, as of the date hereof, the following transactions have successfully been negotiated:

- On August 19, 2020, PagSeguro Internet S.A., Brazil, a subsidiary of the NASDAQ-listed PagSeguro Digital Ltd, purchased all shares in Wirecard Brazil S.A. (99.967% of which were held by WDAI and 0.033% by Wirecard).  The transaction closed on October 31, 2020.

- On November 16, 2020, a subsidiary of the leading European banking group Banco Santander S.A. entered into agreements to purchase the Core Business from Wirecard and its affiliates or their respective insolvency administrator.  The transaction closed on January 28, 2021.

- On March 28, 2021, Live group Pty Ltd, Australia entered into a share sale and purchase agreement regarding Wirecard's indirect Australian subsidiary.  The transaction is expected to close in April 2021.

- On March 29, 2021, Finch Capital Fund II Coöperatief U.A., Netherlands entered into a share sale and purchase agreement regarding Wirecard's indirect Turkish subsidiary. The transaction is expected to close during the second half of 2021.

20.    In addition to overseeing the disposition of the aforementioned businesses and subsidiaries, from his appointment as expert during the preliminary insolvency proceedings and

8

ny-2086744

over the course of the German Proceeding to date, the Insolvency Administrator has, among other

things, engaged and overseen the following specific and general matters :

- Overseeing the administration and management of Wirecard;
- Gaining access to and control over certain electronic files of Wirecard and undertaking a detailed review of the same;
- Initiating an investigation with respect to the irregularities that led to the insolvency petition;
- Monitoring the Securities Litigation (as defined herein);
- Holding ongoing discussions with all of the major creditors of Wirecard;
- Holding meetings and discussions with management and employees of Wirecard;
- Liaising with Wirecard's banks to arrange for control and transfer of funds to the Insolvency Administrator; and
- Holding ongoing discussions with financial regulators, including BaFin.

## V.    WIRECARD'S ACTIVITIES IN AND CONNECTIONS TO GERMANY

21.    The Insolvency Administrator was appointed by the German Court pursuant to the

Insolvency Order to act as the insolvency administrator of Wirecard.  For more than 20 years, the

Insolvency Administrator has been appointed by German courts to administer insolvencies

implicating large companies with international businesses, often in cases involving alleged fraud.

The Insolvency Administrator has acted in this capacity with respect to numerous estates,

including those of P&R Group (involving 54,000 investors with an investment volume of more

than EUR 3 billion in shipping containers), Phoenix Solar AG, German Petroplus entities (a

European oil refinery group), as well as Qimonda, the leading European listed semiconductor

producer. The Insolvency Administrator has been recognized as a foreign representative pursuant

to Chapter 15 in the past and is familiar with a significant number of the offshore Chapter 15 cases

that have been filed in the United States.

22.     Among other things, the Insolvency Administrator is charged with administering, protecting and liquidating the business and assets of Wirecard and acting on behalf of Wirecard. The Insolvency Administrator is also authorized to bring or defend any action or legal proceeding in the name or on behalf of Wirecard, or for the benefit of its estate.  As such, the Insolvency Administrator is the person responsible for representing Wirecard in the German Proceeding and in all related matters, including this matter.

23.     I believe the facts in this case clearly demonstrate that Wirecard has its "center of its main interests" ("COMI") in Germany.  Wirecard was formed under the laws of Germany and has always operated from Germany and maintained its registered office there.   Moreover, I understand that the Wirecard Group was always closely directed by the executive board of Wirecard, which resides in Germany.

24.     I have been directly involved in several facets of the ongoing German Proceeding. Based upon this experience, I am confident that Wirecard's "nerve center" continues to be in Germany during the course of the German Proceeding. By opening the German Proceeding in Munich, the German Court also confirmed Wirecard's COMI in Germany.

25.     For example, to my knowledge all relevant books, records, contracts, operating agreements, and other critical documentation of Wirecard have always been held and continue to be held in Germany.

26.     In addition, the Insolvency Administrator is solely responsible for the disposal of Wirecard's assets pursuant to Section 80 of the German Insolvency Code. The Insolvency Administrator operates from Germany.

27.     I have also reviewed voluminous documentation issued by and to Wirecard.  In all such documentation, Wirecard is referred to and addressed as a German company.

ny-2086744

28.     All creditors of Wirecard may submit their claims in the German Proceeding, and stakeholders have the right to access the German Court and appeal decisions of the Insolvency Administrator.  These parties include, but are not limited to, all major financial creditors who provided financing to Wirecard (*e.g.*, Commerzbank and ING).  In addition, through the creditors' assembly and meetings with the Creditors' Committee, the Insolvency Administrator has also met (including telephonically) with each of Wirecard's major creditors, either directly or through their counsel.

29.     Substantially all of the work to date relating to the German Proceeding has been conducted in Germany, and all of the work has been and will continue to be supervised by the Insolvency Administrator, and, ultimately, subject to the supervision of the German Court.

30.     Since the commencement of the German Proceeding, the Insolvency Administrator and his counsel have worked in the interest of Wirecard's creditors on an almost non-stop basis.  I highlighted some of the major endeavors undertaken above principally for the purpose of demonstrating the clear establishment of Wirecard's "nerve center" in Germany.

31.     In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign insolvency proceedings, except the German Proceeding, with respect to Wirecard.

## VI.  CONCLUSION

32.     Under the supervision of the German Court, with the ancillary assistance of this Court, the ultimate goal of the Insolvency Administrator is to satisfy the claims of creditors in the best way possible.  To effectuate this goal, the Insolvency Administrator respectfully requests the assistance of the Court to recognize the German Proceeding also vis-a-vis creditors in the United States.

33.     It is my belief that the relief requested by the Petition and the Motion for Provisional Relief is necessary to give effect to the German Proceeding in the United States and to prevent

ny-2086744

creditors from taking actions in the United States under U.S. law that may frustrate the German Proceeding. The relief sought will reasonably assure the just treatment of all creditors, as creditors in the United States will not be prejudiced or unduly inconvenienced in the processing of claims under the German Insolvency Code. Moreover, the relief sought in the Petition will ensure that claims of all creditors will be processed in an orderly and equitable manner.

34. Accordingly, I respectfully request that this Court enter an Order (a) recognizing (i) the Insolvency Administrator as the duly authorized foreign representative of Wirecard and (ii) the German Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code; (b) granting the Motion for Provisional Relief; and (c) granting such other and further relief as this Court may deem just and proper.

*[Signature page follows]*

ny-2086744

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury

under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of April, 2021
in Berlin, Germany


/s/ *Rechtsanwalt Dr. Christian Pleister*

Rechtsanwalt Dr. Christian Pleister

**<u>Exhibit A</u>**

ny-2086744

**Exhibit A**

# / Wirecard|Group Chart



Status as of June 25, 2020

**No**π**r**

## Exhibit B

Page 1 of 4 of certified translation from German into English:

[no fix headers]

# Munich Local Court
(*Amtsgericht München*)
Department for Insolvency Matters
(*Abteilung für Insolvenzsachen*)

Case No.:  1542 IN 1308/20



In the proceedings concerning the petition by

**Wirecard AG**, represented by the management board, Einsteinring 35, 85609 Aschheim
Registry court: Munich Local Court (*Amtsgericht München*), registry no.: HRB 169227
– Debtor –

for commencement of insolvency proceedings over its own assets

Munich Local Court issues the following

# Order

on 29 June 2020.

In order to safeguard the Debtor's assets from detrimental changes (section 21(1) and (2) German Insolvency Code (*Insolvenzordnung* – InsO))

- provisional insolvency administration is ordered at 12:00 hours on 29 June 2020 (section 21(2) sentence 1 no. 1 Insolvency Code.

Person appointed as insolvency administrator: Michael Jaffé (Dr. jur.), lawyer, Franz-Joseph-Str. 8, 80801 Munich, telephone: +49(89)2554870, telefax: +49(89)25548710, e-mail: muenchen@jaffe-rae.de.

The provisional insolvency administrator is entitled to enter the Debtor's premises and to perform investigations there. **In relation to the Debtor's business premises and property in Aschheim, he is hereby additionally vested with rights to determine who should be allowed access, and is in particular granted the right to give instructions to everyone in this respect, even extending to banning them from the property.**

The Debtor is required to allow the provisional insolvency administrator to inspect its records and business documents and to provide him with all documents required (section 22(3) Insolvency Code).

The provisional insolvency administrator is required to examine whether the Debtor's assets will cover the costs of the proceedings.

The provisional insolvency administrator is authorised to take possession of the assets subject to enforcement, in particular to collect receivables of the Debtor in a trust account to be set up by him. The third-party debtors may only make payments to the provisional insolvency administrator unless the insolvency administrator agrees to payment being made to the Debtor.

The provisional insolvency administrator is authorised to collect any cash in hand of the Debtor in a trust account.

The provisional insolvency administrator is vested with the task of cash management.

The provisional insolvency administrator is instructed in accordance with section 21(2) no. 1 and section 8(3) Insolvency Code to serve any documents to be served in the proceedings. Serving court decisions on the Debtor is excluded from this; these will be served by the insolvency court.

The public announcements continue to be the responsibility of the insolvency court.

- it is ordered in accordance with section 21(2) sentence 1 no. 2 alt. 2 Insolvency Code that disposals by the Debtor are only effective with the consent of the provisional insolvency administrator. This order also covers collecting outstanding claims and receivables.

- enforcement measures against the Debtor under section 21(2) no. 3 Insolvency Code, unless immovable items are involved, are once again prohibited and provisionally stayed, confirming the order of 25 June 2020.


**Information on legal remedies:**

An immediate appeal (below "appeal") may be brought against the decision. The appeal is to be filed within a statutory time limit of **two weeks** to:

> Munich Local Court
> (*Amtsgericht München*)
> Pacellistr. 5
> 80333 Munich

The time limit begins at the time the decision is promulgated or, if it is not promulgated, at the time of service or effective public announcement on the internet in accordance with section 9 Insolvency Code (www.insolvenz-bekanntmachungen.de). The public announcement is sufficient as proof of the service to all parties, even if the Insolvency Code prescribes specific service in addition to this (section 9(3) Insolvency Code). It is deemed to have been effected as soon as two additional days have passed from the date of publication (section 9(1) sentence 3 Insolvency Code). The event which occurs first (promulgation, service or effective public announcement) is relevant for the start of the time limit.

Page 3 of 4 of certified translation from German into English:

*[tax header]*

The appeal is to be made in writing or by having it recorded as a statement at the office of the court referred to above. It can also be put on record at the office of every local court, although the time limit is only met if the record is received on time at the court referred to above. The involvement of a lawyer is not prescribed.

The appeal is to be signed by the appellant or the appellant's authorised representative.

The written appeal must contain the name of the decision being contested as well as a statement that the appeal is being brought against this decision.

Legal remedies may also be submitted as an electronic document. An ordinary e-mail is not sufficient to meet the statutory requirements.

The electronic document must
- have a qualified electronic signature of the responsible person attached to it or
- be signed by the responsible person and submitted using a secure means of transmission.

An electronic document to which a qualified electronic signature of the responsible person is attached may be transmitted as follows:
- using a secure means of transmission or
- to the court's Electronic Court and Administrative Mailbox (*Elektronisches Gerichts- und Verwaltungspostfach* (EGVP)) set up for receiving electronic documents.

Reference is made to section 130a(4) of the German Code of Civil Procedure (*Zivilprozessordnung* – ZPO) regarding secure means of transmission. Regarding the other preconditions for electronic communication with the courts, reference is made to the German Ordinance on the Technical Framework Conditions for Electronic Legal Correspondence and the Special Electronic Public Authorities' Mailbox (Electronic Legal Correspondence Ordinance (*Elektronischer-Rechtsverkehr-Verordnung* – ERW)), as amended from time to time, and to the website www.justiz.de.

*[signed]*
Dr Haag
Judge at the Local Court

Page 4 of 4 of certified translation from German into English:

I hereby certify that the above translation of an order/*Beschluss* by Munich Local Court regarding Wirecard AG dated 29 June 2020, from German into English, is correct and complete.

The translation was prepared on the basis of the attached copy.

31 March 2021

Sarah Farnworth MA, BA (Hons)

[Stamp: Sarah C. Farnworth * State certified translator * Sworn translator of English authorised by the president of Dusseldorf Higher Regional Court]



## Amtsgericht München

Abteilung für Insolvenzsachen

Az.:  1542 IN 1308/20

In dem Verfahren über den Antrag d.

**Wirecard AG**, vertreten durch d. Vorstand, Einsteinring 35, 85609 Aschheim
Registergericht: Amtsgericht München Register-Nr.: HRB 169227
- Schuldnerin -

auf Eröffnung des Insolvenzverfahrens über das eigene Vermögen

erlässt das Amtsgericht München am 29.06.2020 folgenden

# Beschluss

Zur Sicherung des Schuldnervermögens vor nachteiligen Veränderungen (§ 21 Abs. 1 und 2 InsO)

- wird am 29.06.2020 um 12:00 Uhr vorläufige Insolvenzverwaltung angeordnet,
  § 21 Abs. 2 S. 1 Nr. 1 InsO.

Zum vorläufigen Insolvenzverwalter wird bestellt: Rechtsanwalt Dr. jur. Michael Jaffé, Franz-Joseph-Straße 8, 80801 München, Telefon: +49(89)2554870, Telefax: +49(89)25548710, Email: muenchen@jaffe-rae.de.

Der vorläufige Insolvenzverwalter ist berechtigt, die Geschäftsräume der Schuldnerin zu betreten und dort Nachforschungen anzustellen. **Bezüglich den betrieblichen Räumlichkeiten und Anwesen der Schuldnerin in Aschheim wird ihm hiermit ergänzend das Hausrecht übertragen und ihm wird insbesondere das Recht erteilt, gegenüber Jedermann diesbezüglich Anweisungen bis hin zum Hausverbot zu erteilen.**
Die Schuldnerin hat dem vorläufigen Insolvenzverwalter Einsicht in ihre Bücher und Geschäftspapiere zu gestatten und ihm alle erforderlichen Auskünfte zu erteilen,
§ 22 Abs. 3 InsO.
Der vorläufige Insolvenzverwalter hat zu prüfen, ob das Vermögen der Schuldnerin die Kosten des Verfahrens decken wird.
Der vorläufige Insolvenzverwalter wird ermächtigt, das vollstreckungsbefangene Vermögen in Besitz zu nehmen, insbesondere Forderungen der Schuldnerin auf ein von ihm zu errichtendes Treuhandkonto einzuziehen. Die Drittschuldner dürfen nur an den vorläufigen Insolvenzverwalter leisten, es sei denn, dieser stimmt der Leistung an den Schuldner zu.
Der vorläufige Insolvenzverwalter wird ermächtigt, Kassenguthaben der Schuldnerin auf ein Treuhandkonto einzuziehen.
Dem vorläufigen Insolvenzverwalter wird die Kassenführung übertragen.
Der vorläufige Insolvenzverwalter wird gem. §§ 21 Abs. 2 Nr. 1, 8 Abs. 3 InsO beauftragt, die

29/06/2020   12:14    00498955972777    AG MUE INSO    S.    02/03

in dem Verfahren vorzunehmenden Zustellungen durchzuführen. Ausgenommen sind die Zustellungen gerichtlicher Entscheidungen an die Schuldnerin; diese erfolgen durch das Insolvenzgericht.

Die öffentlichen Bekanntmachungen obliegen weiterhin dem Insolvenzgericht.

- wird gemäß § 21 Abs. 2 S. 1 Nr. 2 Alt. 2 InsO angeordnet, dass Verfügungen der Schuldnerin nur mit Zustimmung des vorläufigen Insolvenzverwalters wirksam sind.
  Unter diese Anordnung fällt auch die Einziehung von Außenständen und Forderungen.

- werden Maßnahmen der Zwangsvollstreckung gegen die Schuldnerin gemäß § 21 Abs. 2 Nr. 3 InsO, soweit nicht unbewegliche Gegenstände betroffen sind, nochmals unter Bestätigung des Beschlusses vom 25.06.2020 untersagt und einstweilen eingestellt.


### Rechtsbehelfsbelehrung:

Gegen die Entscheidung kann die sofortige Beschwerde (im Folgenden: Beschwerde) eingelegt werden.

Die Beschwerde ist binnen einer Notfrist von **zwei Wochen** bei dem

　　　　　Amtsgericht München
　　　　　Pacellistraße 5
　　　　　80333 München

einzulegen.

Die Frist beginnt mit der Verkündung der Entscheidung oder, wenn diese nicht verkündet wird, mit deren Zustellung bzw. mit der wirksamen öffentlichen Bekanntmachung gemäß § 9 InsO im Internet (www.insolvenzbekanntmachungen.de). Die öffentliche Bekanntmachung genügt zum Nachweis der Zustellung an alle Beteiligten, auch wenn die InsO neben ihr eine besondere Zustellung vorschreibt, § 9 Abs. 3 InsO. Sie gilt als bewirkt, sobald nach dem Tag der Veröffentlichung zwei weitere Tage verstrichen sind, § 9 Abs. 1 Satz 3 InsO. Für den Fristbeginn ist das zuerst eingetretene Ereignis (Verkündung, Zustellung oder wirksame öffentliche Bekanntmachung) maßgeblich.

Die Beschwerde ist schriftlich einzulegen oder durch Erklärung zu Protokoll der Geschäftsstelle des genannten Gerichts. Sie kann auch vor der Geschäftsstelle jedes Amtsgerichts zu Protokoll erklärt werden; die Frist ist jedoch nur gewahrt, wenn das Protokoll rechtzeitig bei dem oben genannten Gerichte eingeht. Eine anwaltliche Mitwirkung ist nicht vorgeschrieben.

Die Beschwerde ist von dem Beschwerdeführer oder seinem Bevollmächtigten zu unterzeichnen.

Die Beschwerdeschrift muss die Bezeichnung der angefochtenen Entscheidung sowie die Erklärung enthalten, dass Beschwerde gegen diese Entscheidung eingelegt werde.


Rechtsbehelfe können auch als **elektronisches Dokument** eingereicht werden. Eine einfache E-Mail genügt den gesetzlichen Anforderungen nicht.

Das elektronische Dokument muss
- mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen sein oder
- von der verantwortenden Person signiert und auf einem sicheren Übermittlungsweg eingereicht werden.

Ein elektronisches Dokument, das mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen ist, darf wie folgt übermittelt werden:
- auf einem sicheren Übermittlungsweg oder
- an das für den Empfang elektronischer Dokumente eingerichtete Elektronische Gerichts- und Verwaltungspostfach (EGVP) des Gerichts.

Wegen der sicheren Übermittlungswege wird auf § 130a Absatz 4 der Zivilprozessordnung verwiesen. Hin-

29/06/2020  12:14    00498955972777    AG MÜE 1N30    S.    03/03

ichtlich der weiteren Voraussetzungen zur elektronischen Kommunikation mit den Gerichten wird auf die
Verordnung über die technischen Rahmenbedingungen des elektronischen Rechtsverkehrs und über das be-
sondere elektronische Behördenpostfach (Elektronischer-Rechtsverkehr-Verordnung - ERVV) in der jeweils
geltenden Fassung sowie auf die Internetseite www.justiz.de verwiesen.

Dr. Haag
Richter am Amtsgericht

**Exhibit C**

Exhibit C

<u>Translation</u>

Copy

**Munich Local Court**
Insolvency Matters Division
Case No 1542 IN 1308/20

[stamp: Jaffé lawyers, insolvency
administrators
Received 25 August 2020]

[Coat of arms]

In the proceedings regarding the petition of

**Wirecard AG,** represented by the management board (*Vorstand*), Einsteinring 35, 85609
Aschheim[, Germany]
Registry court: Munich Local Court (*Amtsgericht*), register number: HRB 169227
- Debtor -

for the opening of insolvency proceedings over its own assets

Munich Local Court, on 25 August 2020, issues the following

# Order

1.  The insolvency proceedings over the assets of the Debtor are opened on account of
    insolvency and over-indebtedness at 10 am on 25 August 2020 as main insolvency
    proceedings within the meaning of Article 3(1) of Regulation (EU) 2015/848 of the
    European Parliament and of the Council of 20 May 2015 on insolvency proceedings.

2.  Dr jur Michael Jaffé, lawyer (*Rechtsanwalt*)
    Franz-Joseph-Str 8, 80801 Munich[, Germany]
    Phone: +49(89)2554870
    Fax: +49(89)25548710
    Email: muenchen@jaffe-rae.de

    is appointed insolvency administrator.

3.  The insolvency creditors are requested to file insolvency claims (Section 38 German
    Insolvency Statute (*Insolvenzordnung* – InsO)) with the insolvency administrator in
    writing by **26 October 2020**.

    When filing such a claim, the basis and the amount of the claim have to be stated.

    The parties involved can inspect the proofs of debt and the insolvency schedule at
    the registry of the Insolvency Court.

2

4.  The report meeting and date for the creditors' meeting to decide on the potential election of another insolvency administrator, on the maintenance of a creditors' committee and on the matters referred to in Section 35(2) (decision on the validity of the administrator's declaration regarding assets from non-dependent employment), Section 66 (insolvency administrator's rendering of account), Section 100 to 101 (maintenance payments from the insolvency estate), Section 149 (investment of objects of value), Section 157 (closing down or continuation of the enterprise, commissioning of the insolvency administrator to draw up an insolvency plan, determining the objectives of the plan), Section 160 (consent to legal transactions of particular importance to be performed by the insolvency administrator, in particular if such transaction purports to sell the enterprise, plant, the entire stock, a part of real property to be disposed of by private sale, the debtor's shares in another enterprise if such shares are intended to bring about a permanent affiliation to such other enterprise or the entitlement to receive recurring earnings; if such transaction purports to take out a loan that would place considerable burdens on the insolvency estate; if such transaction purports to bring or join a court action amounting to a considerable value in dispute, to refuse the bringing of such action, or to negotiate a settlement or compromise to settle or avoid any such action), Section 162 (sale of enterprise to persons with specific interests), Section 163 (sale of enterprise below value), Section 233 (consent to the continuation of realisation and distribution in the case of an insolvency plan), Section 271 (Application for debtor-in-possession status) German Insolvency Statute is scheduled at

**<u>Wednesday, 8:30 am, 18 November 2020.</u>**

**Löwenbräukeller, Nymphenburger Str 2, Stiglmaierplatz, 80333 Munich; please appear in good time because of the required security checks.**

**<u>Note:</u>**

**<u>Consent to the performance of legal transactions of particular importance within the meaning of Section 160 German Insolvency Statute will be deemed given if the convened creditors' meeting lacks quorum.</u>**

## Further advice regarding the holding of the creditors' meeting under coronavirus conditions

We expressly advise you that the report meeting is intended to take place under the special conditions of the coronavirus pandemic and amid the statutory restrictions associated therewith at the time of the report meeting. Suitable areas which can also be used under coronavirus conditions are currently hard to find. The Löwenbräukeller has

3

a limited area of approximately 1,665m2 and due to the coronavirus social distancing rules, the useable area will be reduced even further meaning that there are currently only about 300 seats available under coronavirus conditions. Any insolvency creditors wishing to attend the report meeting are therefore requested to register with the Insolvency Court of Munich Local Court, 80325 Munich, by 6 November 2020, stating the case number and the types and amounts of their claims, also for the Insolvency Court of the Local Court to be able to determine the number of creditors interested in attending in view of the size of the room and, in addition, to minimise the time required for admission control and the proximity between attendees and security staff associated therewith which favours infections. For the sake of clarity it is pointed out that such registration is not a requirement for being allowed access to the report meeting; all non-subordinated insolvency creditors able to furnish proof of such capacity and their personal details at admission control will be entitled to enter. It is further clarified that the above registration for the report meeting in no way substitutes filing claims with the insolvency administrator in accordance with Section 174 onwards German Insolvency Statute. If the level of interest requires this, only one authorised representative may be allowed access for each creditor.

**Due to the restrictions applicable under the coronavirus laws, all attendees are required to wear suitable masks covering their mouths and noses and to comply with the social distancing rules at the entrance and during the report meeting.**

Please also note that, because of the coronavirus threat, the rooms will be permanently aired which means that all windows that can be opened will be opened so that depending on the prevailing weather conditions, the temperature in the room may be cool. It may be advisable to dress accordingly. There will be no cloakroom and no catering service, also in the light of the coronavirus situation. It will therefore not be possible to store any items not permitted at the meeting (dangerous items, luggage, etc.) .

5.    The verification meeting is scheduled to take place on

**Thursday, 9 am, 10 December 2020.**
**Meeting room 202, 2nd floor, Infanteriestr 5, Munich Local Court**

Notes:
Creditors whose claims are admitted will not receive any notification.

6.    The insolvency administrator has to be notified without undue delay of any security interests in movable objects or rights (Section 28(2) German Insolvency Statute).

Details are to be provided of the object of the claimed security interest, the nature and causal origin of the security interest, as well as the secured claim. Any person who culpably fails to provide this information, or provides it late, will be liable for the resulting damage (Section 28(2) German Insolvency Statute).

4

7. Persons with obligations towards the Debtor are required no longer to fulfil these obligations to the Debtor, but to the insolvency administrator (Section 28(3) German Insolvency Statute).

8. A creditors' committee is established for the time until the first creditors' meeting in accordance with Section 67(1) German Insolvency Statute. The committee consists of the following members:

- **Trinity Investments DAC**
  Fourth Floor, 3 George's Dock, I.F.S.C., Dublin 1, Ireland, here represented by Ms Anke Heydenreich

- **ING Bank AG, a branch of ING-DiBa AG**
  Theodor-Heuss-Allee 2, 60486 Frankfurt

- **Marvin Kewe, Tilp Rechtsanwaltsgesellschaft mbH**,
  Einhornstr 21, 72138 Kirchentellinsfurt

- Ms **Anne Rösener**
  Einsteinring 35, 85609 Aschheim

9. The insolvency administrator is instructed pursuant to Section 8(3) German Insolvency Statute to serve any documents to be served in the proceedings, starting with the service of the order initiating the insolvency proceedings, in accordance with Section 30 German Insolvency Statute.
He is furthermore conferred the duty to inform all known foreign creditors as required under Article 54 of the European Insolvency Regulation.

Excluded from the foregoing is the service of the order initiating the insolvency proceedings on the Debtor which is made by the Insolvency Court.

The Insolvency Court remains responsible for all public announcements.

10. **Note**:

Any data from insolvency proceedings including the opening proceedings published in an electronic information and communication system will be deleted no later than 6 months after termination of the insolvency proceedings or their discontinuation becoming *res judicata*, Section 3(1) sentence 1 of the German Ordinance on Public Announcements in Insolvency Proceedings (*Verordnung zu öffentlichen Bekanntmachungen in Insolvenzverfahren im Internet*, InsOBekV).

Other publications under the Insolvency Statute will be deleted one month after the first date of publication.

5

Reasons:

The petition was received by Munich Insolvency Court on 25 June 2020.

Munich Insolvency Court has jurisdiction over the Debtor's place of general jurisdiction (Section 3(1) sentence 1 German Insolvency Statute).

*According to the Court's findings, insolvency and over-indebtedness exist.*

International jurisdiction of the German insolvency courts results from the fact that the centre of the Debtor's main interests is situated in Germany (Article 4(1), Article 3(1) European Insolvency Regulation 2015 - Regulation (EU) 2015/848 of the European Parliament and of the Council of 20 May 2015, Official Journal of the European Union L 141/19 of 5 June 2015). Local jurisdiction of Munich Local Court results from Section 3(1) sentence 1 Insolvency Statute) since the centre of the Debtor's self-employed business activity, the Debtor's head office registered in the commercial register and the business address registered there are located in the district of this Insolvency Court, namely in Aschheim, all of which is objectively recognisable to an external third party. Besides, all of the said legal facts are also supported by the findings of the expert and of the provisional insolvency administrator.

**Advice on legal remedies:**

An immediate appeal may be filed against this decision (hereinafter: appeal).

The appeal has to be filed within a statutory period of **two weeks** with

> Munich Local Court
> *(Amtsgericht München)*
> Pacellistr. 5
> 80333 Munich

The period begins to run on pronouncement of the decision or, if the decision is not pronounced, upon its *service or valid publication on the internet* (www.insolvenzbekanntmachungen.de) in accordance with Section 9 German Insolvency Statute. Publication suffices as evidence of service on all parties involved, even if the Insolvency Statute prescribes separate service in addition to such publication, Section 9(3) German Insolvency Statute. Such publication shall be deemed to have been effected when two more days have expired following the date of publication, Section 9(1) sentence 3 German Insolvency Statute. The event that occurred first (pronouncement, service or valid publication) shall be decisive for the beginning of the period.

The appeal must be lodged in writing or by oral statement recorded by the registry of the named Court. It can also be stated to and recorded by the registry of any other local court (*Amtsgericht*) but the time limit is observed only if the record is received by the Court named above in due time. There is no requirement that a lawyer must be involved.

The appeal has to be signed by the appellant or its authorised agent.

The notice of appeal has to contain the name of the decision appealed and state that the said decision is being appealed against.

6

Legal remedies can also be lodged as **electronic documents**. A simple e-mail is not sufficient to meet the statutory requirements.

The electronic document must
– bear the qualified electronic signature of the person responsible or
– be signed by the responsible person and filed by secure means of transmission.

An electronic document bearing the qualified electronic signature of the person responsible may be transmitted as follows:
– by secure means of transmission or
– to the Electronic Court and Administration Mailbox (EGVP) of the court which has been established for receiving electronic documents.

With respect to electronic means of transmission, reference is made to Section 130a(4) German Code of Civil Procedure (*Zivilprozessordnung*). As regards the further requirements for electronic communication with the courts, reference is made to the German Ordinance regarding the technical framework conditions for electronic legal communication and the specific electronic mailbox of government authorities
(*Verordnung über die technischen Rahmenbedingungen des elektronischen Rechtsverkehrs und über das besondere elektronische Behördenpostfach* – ERVV) as amended from time to time and to the website at www.justiz.de.


Signed

Dr Haag
Judge at the Local Court

---

In my capacity as a translator for the English language, publicly appointed and sworn in the Federal State of Bavaria, Germany, I hereby certify that the above is an accurate and complete translation of the attached German document.

Als in Bayern öffentlich bestellte und allgemein beeidigte Übersetzerin für die englische Sprache bestätige ich: Vorstehende Übersetzung der mir in digitaler Form vorgelegten, in deutscher Sprache abgefassten Urkunde ist richtig und vollständig.

Munich/München, Germany, 26 August 2020

Ariane Sigl, LL.M.
Dipl.-Übersetzerin
Öffentlich bestellte und allgemein
beeidigte Übersetzerin für die englische Sprache

25/08/2020  10:18   00498955972777              AG MUE INSO                    S.    02/07

Abschrift

## Amtsgericht München
Abteilung für Insolvenzsachen
Az.:    1542 IN 1308/20





In dem Verfahren über den Antrag d.

**Wirecard AG**, vertreten durch d. Vorstand, Einsteinring 35, 85609 Aschheim
Registergericht: Amtsgericht München Register-Nr.: HRB 169227
- Schuldnerin -

auf Eröffnung des Insolvenzverfahrens über das eigene Vermögen

erlässt das Amtsgericht München am 25.08.2020 folgenden

# Beschluss

1.    Das Insolvenzverfahren über das Vermögen der Schuldnerin wird wegen Zahlungsunfähig-
      keit und Überschuldung am 25.08.2020 um 10.00 Uhr als Hauptinsolvenzverfahren im Sin-
      ne des Art. 3 Abs. 1 der Verordnung (EU) 2015/848 des Europäischen Parlaments und des
      Rates vom 20. Mai 2015 über Insolvenzverfahren eröffnet.

2.    Zum Insolvenzverwalter wird bestellt:

      Rechtsanwalt Dr. jur. Michael Jaffé
      Franz-Joseph-Straße 8, 80801 München
      Telefon: +49(89)2554870
      Telefax: +49(89)25548710
      Email: muenchen@jaffe-rae.de

3.    Die Insolvenzgläubiger werden aufgefordert, Insolvenzforderungen (§ 38 InsO) bis zum
      **26.10.2020** bei dem Insolvenzverwalter schriftlich anzumelden.

      Bei der Anmeldung sind Grund und Betrag der Forderung anzugeben.

      Die Forderungsanmeldungen und die Insolvenztabelle können durch die Beteiligten auf der
      Geschäftsstelle des Insolvenzgerichts eingesehen werden.

25/08/2020   10:18   00498955972777                    AG MUE INSO                          S.    03/07

1542 IN 1308/20                              - Seite 2 -

4.   Berichtstermin sowie Termin zur Beschlussfassung der Gläubigerversammlung über die
     eventuelle Wahl eines anderen Insolvenzverwalters, über die Beibehaltung eines Gläubi-
     gerausschusses sowie über die in den §§ 35 Abs. 2 (Entscheidung über die Wirksamkeit
     der Verwaltererklärung zu Vermögen aus selbstständiger Tätigkeit), 66 (Rechnungslegung
     Insolvenzverwalter), 100 f. (Unterhaltszahlungen aus der Insolvenzmasse), 149 (Anlage
     von Wertgegenständen), 157 (Stilllegung bzw. Fortführung des Unternehmens, Beauftra-
     gung des Insolvenzverwalters mit der Ausarbeitung eines Insolvenzplans, Vorgabe der
     Zielsetzung des Plans), 160 (Zustimmung zu besonders bedeutsamen Rechtshandlungen
     des Insolvenzverwalters, insbesondere, wenn das Unternehmen oder ein Betrieb, das Wa-
     renlager im Ganzen, ein unbeweglicher Gegenstand aus freier Hand, die Beteiligung des
     Schuldners an einem anderen Unternehmen, die der Herstellung einer dauernden Verbin-
     dung zu diesem Unternehmen dienen soll, oder das Recht auf den Bezug wiederkehren-
     der Einkünfte veräußert werden soll; wenn ein Darlehen aufgenommen werden soll, das
     die Insolvenzmasse erheblich belasten würde oder wenn ein Rechtsstreit mit erheblichem
     Streitwert anhängig gemacht oder aufgenommen, die Aufnahme eines solchen Rechts-
     streits abgelehnt oder zur Beilegung oder zur Vermeidung eines solchen Rechtsstreits ein
     Vergleich oder ein Schiedsvertrag geschlossen werden soll), 162 (Betriebsveräußerung an
     besonders Interessierte), 163 (Betriebsveräußerung unter Wert), 233 (Zustimmung Fort-
     setzung Verwertung und Verteilung bei Insolvenzplan) und 271 (Beantragung einer Eigen-
     verwaltung) InsO bezeichneten Angelegenheiten wird anberaumt auf

**Mittwoch, 18.11.2020, 08:30 Uhr,**

**Löwenbräukeller, Nymphenburger Straße 2 Stiglmaierplatz, 80335 München; wg.**

**notwendigen Sicherheitskontrollen bitte rechtzeitig erscheinen**

**Hinweis:**

**Die Zustimmung zur Vornahme besonders bedeutsamer Rechtshandlungen
im Sinne des § 160 InsO gilt als erteilt, wenn die einberufene Gläubigerver-
sammlung beschlussunfähig ist.**

## Weitere Hinweise zur Durchführung der Gläubigerversammlung unter Corona-Bedingungen

Es wird ganz ausdrücklich darauf hingewiesen, daß der Berichtstermin unter den besonderen
Bedingungen der Corona-Pandemie und vor dem Hintergrund der damit verbundenen gesetzli-
chen Beschränkungen zum Zeitpunkt des Berichtstermines stattfinden soll. Geeignete Flächen,

1542 IN 1308/20   - Seite 3 -

die auch unter Corona-Bedingungen genutzt werden können, sind derzeit nur schwer zu finden.
Die Fläche des Löwenbräukellers ist mit ca. 1.665 m2 begrenzt und durch die Corona-Abstands-
bestimmungen wird die nutzbare Fläche noch weiter eingeschränkt, so daß unter Corona-Bedin-
gungen aktuell nur ca. dreihundert Sitzplätze zur Verfügung stehen. Am Berichtstermin teilneh-
menwollende Insolvenzgläubiger werden daher gebeten, sich bis 06.11.2020 gegenüber dem
Amtsgericht München Insolvenzgericht, 80325 München unter Angabe des Aktenzeichens, der
Art und Höhe Ihrer Forderung anzumelden, damit hierdurch das Amtsgericht Insolvenzgericht
auch erkennen kann, mit welchem Teilnahmeinteresse im Hinblick auf die Raumgröße zu rech-
nen ist und damit auch der Prüfungsaufwand beim Einlaß, und die hiermit verbundene infektions-
begünstigende Nähe der Teilnehmer und des Sicherheitspersonals, minimiert werden kann. Es
wird klar gestellt, daß eine solche Anmeldung nicht Voraussetzung für den Zulaß zum Berichts-
termin ist, zugangsberechtigt ist jeder nicht nachrangige Insolvenzgläubiger, der diese Eigen-
schaft und seine Personalien bei der Eingangskontrolle belegen kann. Desweiteren wird klar ge-
stellt, daß die obig genannte Anmeldung zum Berichtstermin in keinster Weise eine Forderungs-
anmeldung an den Insolvenzverwalter nach §§ 174ff InsO ersetzt. Bei entsprechender Nachfra-
ge kann pro Gläubiger nur eine vertretungsberechtigte Person Eintritt erhalten.

**Wegen den Beschränkungen der Corona-Gesetzgebung ist beim Einlaß und während
des Berichtstermins ein geeigneter Mund-Nasen-Schutz zu tragen und die Abstandsbe-
schränkungen sind von jedem Teilnehmer zu wahren.**

Es wird desweiteren aufmerksam gemacht, daß die Räume wegen der Corona-Gefahr ständig
gelüftet werden, wobei alle Fenster, die geöffnet werden können, auch geöffnet werden, so daß
je nach den herrschenden Witterungsbedingungen mit einem kühlen Raumklima zu rechnen ist.
Auf eine entsprechende Bekleidung wird hingewiesen. Eine Garderobe oder eine Verpflegungsein-
richtung steht auch im Hinblick auf die Corona-Situation nicht zur Verfügung. In der Versamm-
lung nicht zugelassene Gegenstände (gefährliche Gegenstände, Gepäck o.ä.) können daher
nicht aufbewahrt werden.

5.   Prüfungstermin wird anberaumt auf

**Donnerstag, 10.12.2020, 09:00 Uhr,**

**Sitzungssaal 202, 2. Stock, Infanteriestraße 5, Amtsgericht München**

Hinweise:
Gläubiger, deren Forderungen festgestellt werden, erhalten keine Benachrichtigung.

6.   Sicherungsrechte an beweglichen Gegenständen oder an Rechten sind dem Insolvenzver-
walter unverzüglich anzuzeigen (§ 28 Abs. 2 InsO).
Der Gegenstand an dem das Sicherungsrecht beansprucht wird, die Art und der Entste-
hungsgrund des Sicherungsrechts sowie die gesicherte Forderung sind zu bezeichnen.
Wer die Mitteilung schuldhaft unterlässt oder verzögert, haftet für den daraus entstehenden

1542 IN 1308/20                          - Seite  4  -

Schaden (§ 28 Abs. 2 InsO).

7.    Personen, die Verpflichtungen gegenüber der Schuldnerin haben, werden aufgefordert,
      nicht mehr an diese, sondern an den Insolvenzverwalter zu leisten (§ 28 Abs. 3 InsO).

8.    Ein Gläubigerausschuss wird bis zur ersten Gläubigerversammlung nach § 67 I InsO ein-
      gesetzt. Dieser besteht aus den Mitgliedern

      - **Trinity Investments DAC**
        Fourth Floor, 3 George`s Dock, I.F.S.C., Dublin 1, Irland, hier vertreten durch Frau An-
        ke Heydenreich

      - **ING Bank AG, eine Niederlassung der ING-DiBa AG**
        Theodor-Heuss-Allee 2, 60486 Frankfurt

      - **Marvin Kewe, Tilp Rechtsanwaltsgesellschaft mbH,**
        Einhornstraße 21, 72138 Kirchentellinsfurt

      - Frau **Anne Rösener**
        Einsteinring 35, 85609 Aschheim

9.    Der Insolvenzverwalter wird gem. § 8 Abs. 3 InsO beauftragt, die in dem Verfahren vorzu-
      nehmenden Zustellungen, beginnend mit der Zustellung des Eröffnungsbeschlusses nach
      § 30 InsO, durchzuführen.
      Ferner wird ihm die gem. Art. 54 EuInsVO erforderliche Unterrichtung aller bekannten aus-
      ländischen Gläubiger übertragen.

      Ausgenommen ist die Zustellung des Eröffnungsbeschlusses an die Schuldnerin; diese er-
      folgt durch das Insolvenzgericht.

      Die öffentlichen Bekanntmachungen obliegen weiterhin dem Insolvenzgericht.

10.   **Hinweis:**

      Die in einem elektronischen Informations- und Kommunikationssystem erfolgte Veröffentli-
      chung von Daten aus einem Insolvenzverfahren einschließlich des Eröffnungsverfahrens
      wird spätestens 6 Monate nach der Aufhebung oder der Rechtskraft der Einstellung des In-
      solvenzverfahrens gelöscht, § 3 Abs. 1 Satz 1 InsOBekV.

      Sonstige Veröffentlichungen nach der Insolvenzordnung werden einen Monat nach dem
      ersten Tag der Veröffentlichung gelöscht.

25/08/2020  10:18   00498955972777          AG MUE INSO          S.    06/07

1542 IN 1308/20                              - Seite 5 -

# Gründe:

Der Antrag ist am 25.06.2020 beim Insolvenzgericht München eingegangen.

Die Schuldnerin hat im Zuständigkeitsbereich des Insolvenzgerichts München ihren allgemeinen Gerichtsstand (§ 3 Abs. 1 Satz 1 InsO).

Nach den Feststellungen des Gerichts sind Zahlungsunfähigkeit und Überschuldung gegeben.

Die internationale Zuständigkeit der deutschen Insolvenzgerichtsbarkeit folgt aus dem Umstand, dass die Schuldnerin den Mittelpunkt ihrer hauptsächlichen Interessen im Inland hat (Art. 4 Abs. 1, 3 Abs. 1 EuInsVO 2015 - Verordnung EU 2015/848 des Europäischen Parlaments und des Rates vom 20.05.2015, AblEU L 141/19 vom 5.6.2015). Die örtliche Zuständigkeit des Amtsgerichts München ergibt sich aus § 3 Abs. 1 InsO, da sich der Mittelpunkt der wirtschaftlich selbstständigen Tätigkeit der Schuldnerin, ihr im Handelsregister eingetragener Sitz und ihre dort eingetragene Geschäftsanschrift im Bezirk des hiesigen Insolvenzgerichts, nämlich in Aschheim, befindet, was allesamt für Dritte objektiv nach außen erkennbar ist. Im Übrigen werden die genannten Rechts-Tatsachen auch durch die Feststellungen des Sachverständigen und des vorläufigen Insolvenzverwalters getragen.

## Rechtsbehelfsbelehrung:

Gegen die Entscheidung kann die sofortige Beschwerde (im Folgenden: Beschwerde) eingelegt werden.

Die Beschwerde ist binnen einer Notfrist von zwei Wochen bei dem

> Amtsgericht München
> Pacellistraße 5
> 80333 München

einzulegen.

Die Frist beginnt mit der Verkündung der Entscheidung oder, wenn diese nicht verkündet wird, mit deren Zustellung bzw. mit der wirksamen öffentlichen Bekanntmachung gemäß § 9 InsO im Internet (www.insolvenzbekanntmachungen.de). Die öffentliche Bekanntmachung genügt zum Nachweis der Zustellung an alle Beteiligten, auch wenn die InsO neben ihr eine besondere Zustellung vorschreibt, § 9 Abs. 3 InsO. Sie gilt als bewirkt, sobald nach dem Tag der Veröffentlichung zwei weitere Tage verstrichen sind, § 9 Abs. 1 Satz 3 InsO. Für den Fristbeginn ist das zuerst eingetretene Ereignis (Verkündung, Zustellung oder wirksame öffentliche Bekanntmachung) maßgeblich.

Die Beschwerde ist schriftlich einzulegen oder durch Erklärung zu Protokoll der Geschäftsstelle des genannten Gerichts. Sie kann auch vor der Geschäftsstelle jedes Amtsgerichts zu Protokoll erklärt werden; die Frist ist jedoch nur gewahrt, wenn das Protokoll rechtzeitig bei dem oben genannten Gerichte eingeht. Eine anwaltliche Mitwirkung ist nicht vorgeschrieben.

Die Beschwerde ist von dem Beschwerdeführer oder seinem Bevollmächtigten zu unterzeichnen.

Die Beschwerdeschrift muss die Bezeichnung der angefochtenen Entscheidung sowie die Erklärung enthal-

25/08/2020  10:18   00498955972777                AG MUE INSO                    S.    07/07

1542 IN 1308/20                    – Seite  6  –

ten, dass Beschwerde gegen diese Entscheidung eingelegt werde.

Rechtsbehelfe können auch als **elektronisches Dokument** eingereicht werden. Eine einfache E-Mail genügt den gesetzlichen Anforderungen nicht.

Das elektronische Dokument muss
- mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen sein oder
- von der verantwortenden Person signiert und auf einem sicheren Übermittlungsweg eingereicht werden.

Ein elektronisches Dokument, das mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen ist, darf wie folgt übermittelt werden:
- auf einem sicheren Übermittlungsweg oder
- an das für den Empfang elektronischer Dokumente eingerichtete Elektronische Gerichts- und Verwaltungspostfach (EGVP) des Gerichts.

Wegen der sicheren Übermittlungswege wird auf § 130a Absatz 4 der Zivilprozessordnung verwiesen. Hinsichtlich der weiteren Voraussetzungen zur elektronischen Kommunikation mit den Gerichten wird auf die Verordnung über die technischen Rahmenbedingungen des elektronischen Rechtsverkehrs und über das besondere elektronische Behördenpostfach (Elektronischer-Rechtsverkehr-Verordnung - ERVV) in der jeweils geltenden Fassung sowie auf die Internetseite www.justiz.de verwiesen.

gez.

Dr. Haag
Richter am Amtsgericht